**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **YULON CLERK,** *on behalf of herself and* *all others similarly situated*, | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **CASH CENTRAL OF UTAH, LLC,** | : | |
| **d/b/a CASH CENTRAL OF** | : | **No. 09-4964** |
| **PENNSYLVANIA, LLC,** | : | |
| **Defendant.** | : | |

**Norma L. Shapiro, J.**                                **August 24, 2011**

<u>**MEMORANDUM**</u>

Plaintiff Yulon Clerk filed a state class action complaint alleging that the financial

lending practices of fourteen defendants were illegal under Pennsylvania law.  Defendants

removed the action to federal court.  We severed plaintiff's claim against defendant Cash

America Net of Nevada, LLC ("Cash America of Nevada") from the claims against the other

thirteen defendants, and severed the claims against the other thirteen defendants from each other.

We retained plaintiff's action against defendant Cash America of Nevada on our docket; the

other thirteen actions were reassigned.  This action, against defendant Cash Central of Utah, LLC

("Cash Central of Utah"), was reassigned to our docket.  Before the court is defendant's motion

to dismiss plaintiff's complaint in favor of, or to compel, arbitration.  For the reasons discussed

below, the motion will be granted.

**I.       Factual Background**

Plaintiff, a Pennsylvania citizen, brings a putative class action on behalf of herself and all

others similarly situated against defendant Cash Central of Utah, a Utah citizen.  Plaintiff's

amended complaint alleges that defendant engaged in illegal, unfair, and deceptive lending practices, in violation of Pennsylvania's Loan Interest Protection Law ("LIPL"), 41 P.S. §§ 101, 502 *et seq.*, Consumer Discount Company Act ("CDCA"), 7 P.S. § 6201 *et seq.*, and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.* Plaintiff also brings claims for unjust enrichment and contractual unconscionability under Pennsylvania law. Plaintiff requests: actual and statutory damages; treble damages under the LIPL; restitution of excess interest and charges collected by defendant; a declaration that the loan agreements signed by plaintiff are void and unenforceable; injunctive relief as the court deems proper; and attorney's fees and costs.

Defendant Cash Central of Utah operated a website to provide short-term loan contracts, also called "payday" loans,[1] to individuals. Plaintiff alleges defendant negotiated or made short-term loans of less than $25,000 with interest rates greatly exceeding the ceilings allowed under the Pennsylvania usury and small-loan laws. Pennsylvania has a general usury ceiling of six percent (6%), but licensed small-loan lenders can make consumer loans for amounts less than $25,000 at interest rates as high as twenty-four percent (24%) APR. *See* 41 Pa. Cons. Stat. Ann. § 201; 7 Pa. Con. Stat. Ann. § 6203. Plaintiffs allege that defendant, who was not licensed as a small-loan lender, charged Pennsylvania customers illegal interest rates exceeding Pennsylvania's six percent (6%) usury ceiling.

Between June and August, 2007, plaintiff entered into seven loan agreements over the

---

[1] "Payday loans are short-term, high-interest-or-fee loans that are generally secured by a post-dated check or a debit authorization executed by the borrower and, subsequently, presented by the lender after a predetermined period, usually set at two weeks to coincide with the borrower's payday." *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 754 (Pa. 2008).

internet with defendant Cash Central of Utah.  Each loan agreement, signed by plaintiff by

clicking a link on defendant's website, contains an identical arbitration clause and class action

waiver.  *See* Def.'s Mot. to Dismiss or Compel Arbitration, Ex. A.  The arbitration clause and

class action waiver state in pertinent part:

> **AGREEMENT TO ARBITRATE ALL DISPUTES.**  You and We agree that any
> and all claims, disputes, or controversies between You and Us . . . shall be resolved
> by binding individual (and not class, consolidated or representative) arbitration by
> and under the Code of Procedure of the National Arbitration Forum ("NAF") in
> effect at the time the claim is filed.  This agreement to arbitrate all disputes shall
> apply no matter by whom or against whom the claim is filed.  Rules and forms of the
> NAF may be obtained and all claims may be filed at any NAF office, on the World
> Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at 'National
> Arbitration forum' [sic], P.O. Box 50191, Minneapolis, Minnesota 55405.'  Your
> arbitration fees may be waived by the NAF or paid by Us in the event you cannot
> afford to pay them.  The cost of any participatory, documentary or telephone hearing,
> if one is held at Your or Our request, will be paid for solely by Us as provided in the
> NAF rules and, if a participatory hearing is requested, it will take place at a location
> near Your residence.  This Agreement shall be governed by the Federal Arbitration
> Act, 9 U.S.C. Sections 1-16. . . . **Notice: YOU AND WE WOULD HAVE HAD
> AN OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND
> HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED
> INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.
> YOU ACKNOWLEDGE AND AGREE THAT BY ENTERING INTO THIS
> AGREEMENT TO ARBITRATE ALL DISPUTES YOU ARE GIVING UP
> YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE OR TO HAVE
> A COURT RESOLVE ANY AND ALL CLAIMS, DISPUTES OR
> CONTROVERSIES ALLEGED AGAINST US OR RELATED THIRD
> PARTIES.**
>
> **AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS
> ACTIONS: To the extent permitted by law, by signing below You agree that
> You will not bring, join, or participate in any class action claim, dispute or
> controversy You may have against Us or Our agents, directors, officers, and
> employees.  You agree to the entry to injunctive relief to stop such a lawsuit.
> You agree to pay costs We incur, including Our costs and attorneys fees in
> seeking such relief.  This agreement is not a waiver of any of Your rights and
> remedies to pursue and claim individually and as a class action in binding
> arbitration as provided above.**

*Id.*

We have subject matter jurisdiction under the Class Action Fairness Act because there is diversity of citizenship between the parties and the aggregate amount in controversy from all putative class members exceeds $5 million.  *See* 28 U.S.C. § 1332(d)(2).

## II.    Discussion

Defendant moves, based on the plain language of the identical arbitration clauses contained in each loan agreement, to dismiss plaintiff's complaint in favor of, or to compel, arbitration.  Plaintiff responds, first, that the arbitration clause, in particular its class action waiver, is procedurally and substantively unconscionable, so it is unenforceable under Pennsylvania law.  Second, plaintiff argues that the arbitration clause is unenforceable because the National Arbitration Forum ("NAF") is designated as the exclusive arbitral forum, but the NAF ceased administering arbitrations between consumers and businesses in July, 2009, so it is no longer available as an arbitral forum.

A court, not an arbitrator, decides issues of arbitrability, *i.e.*, whether the parties have submitted a particular dispute to arbitration by a valid arbitration clause.  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).  A motion to compel arbitration is granted if there are no genuine disputes of material fact that: (1) a valid agreement to arbitrate was entered by the parties; and (2) the parties' claims are within the scope of the arbitration agreement.  *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

There are no disputes of material fact on the issues before the court.  There were seven agreements to arbitrate, evidenced by signed loan agreements, each containing an identical

4

arbitration clause. *See* Def.'s Mot. to Dismiss or Compel Arbitration, Ex. A.  Plaintiff's claims are within the scope of the arbitration clause; the clause states that "all claims, disputes, or controversies between You and Us . . . shall be resolved by binding individual (and not class, consolidated or representative) arbitration." *Id.*  The only issue is the validity of the arbitration clause.

The FAA "establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003).  The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  Section 2 of the FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce[2] to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*"  9 U.S.C. § 2 (emphasis added).  "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

### A.       Unconscionability

Plaintiff argues the arbitration clause is unenforceable because it contains a class action

---

[2] Whether the loan agreements evidence a transaction involving interstate commerce is not disputed.  The loans in this action were entered into over the internet by parties from different states; the loan agreements evidence transactions involving interstate commerce.

waiver that is unconscionable under Pennsylvania law.  It is not necessary to consider whether or

not Pennsylvania law applies to determine the validity of the arbitration clause, and whether or

not the arbitration clause would be unconscionable under Pennsylvania law; under the Supreme

Court's recent decision in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the FAA

preempts Pennsylvania unconscionability law as stated in *Thibodeau v. Comcast Corp.*, 912 A.2d

874, 885-86 (Pa. Super. Ct. 2006).

In *Concepcion*, the Supreme Court held that the FAA preempted California

unconscionability law set forth in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)).

131 S. Ct. at 1753.  The plaintiffs in *Concepcion* each entered into a cell phone agreement with

defendant AT&T Mobility, LLC ("AT&T").  *Id.* at 1744.  AT&T advertised that purchase of its

cell phone service entitled plaintiffs to free phones.  *Id.*  Plaintiffs received free phones but were

charged $30.22 in sales tax based on the phones' retail value.  *Id.*  Plaintiffs filed a complaint

against AT&T in federal court; their complaint was later consolidated with a putative class action

alleging, among other things, that charging sales tax on phones advertised as free constituted

false advertising and fraud.  *Id.*

AT&T moved to compel individual arbitration under the terms of its standard cell phone

agreement containing an arbitration clause and class action waiver.  *Id.* at 1745.  Plaintiffs argued

that the motion to compel individual arbitration should be denied because the class action waiver

in the arbitration clause was unconscionable.  *Id.*  Relying on the California Supreme Court

*Discover Bank* decision, the district court and court of appeals held that the class action waiver in

the arbitration clause was procedurally and substantively unconscionable, and unenforceable.

*Id.*; *see also Discover Bank*, 113 P.3d at 1110 (class action waivers in arbitration agreements are unconscionable "when the waiver is found in a contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages").

The Supreme Court reversed.  The Court held that the FAA preempted California unconscionability law, and under the FAA, the arbitration clause and its class action waiver were valid and enforceable.  *Concepcion*, 131 S. Ct. at 1746-53.  The Court acknowledged that Section 2 of the FAA contains a savings clause permitting "generally applicable contract defenses, such as fraud, duress, or unconscionability," to invalidate an arbitration agreement, but decided that even generally applicable defenses may be preempted by the FAA if they are "applied in a fashion that disfavors arbitration" and undermine the FAA's central purpose.  *Id.* at 1746-49. The Court stated that classwide arbitration undermines the central purpose of the FAA by "sacrific[ing] the principal advantage of arbitration—its informality" for a procedure that is "slower, more costly, and more likely to generate procedural morass than final judgment."  *Id.* at 1750-51.  The Court held that the FAA preempts California unconscionability law because the state law in effect requires the availability of classwide arbitration, and classwide arbitration undermines the central purpose of the FAA.  *Id.* at 1753.

The analysis of California unconscionability law in *Concepcion* applies with equal force to Pennsylvania unconscionability law.  In *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006), the Pennsylvania Superior Court held that an arbitration clause with a class action waiver, contained in a Comcast cable television agreement, was unconscionable under Pennsylvania law.  The court determined the class action waiver was procedurally

unconscionable because plaintiff "was forced to accept every word of all 10 pages of the mass-delivered Comcast [C]ustomer [A]greement or have no cable television service whatsoever, since Comcast holds a government-authorized geographic monopoly." *Id.* at 885. The court determined the class action waiver was substantively unconscionable because plaintiff's damages, a $9.60 per month overcharge, were so small that individual arbitration was economically unfeasible, and without an available class action, defendants were effectively immunized from liability. *Id.* at 885-86.

The Pennsylvania Superior Court decision in *Thibodeau* does not differ materially from the California Supreme Court decision in *Discover Bank*. Under *Concepcion*, state law requiring the availability of classwide arbitration undermines the FAA's central purpose and is preempted by the FAA. *See* 131 S. Ct. at 1753. The FAA preempts Pennsylvania's unconscionability law as to a class action waiver in an arbitration agreement.[3] The instant arbitration clause containing a class action waiver is valid under Section 2 of the FAA.

**B.      Unavailability of NAF**

Plaintiff also argues that the arbitration provision is invalid and unenforceable because it selects the NAF as the exclusive arbitral forum, but the NAF is no longer available to administer

---

[3] The case for FAA preemption may be even stronger with *Thibodeau* compared to *Discover Bank*. In addition to its unconscionability analysis, the Pennsylvania Superior Court notes in *Thibodeau* that a class action waiver in an arbitration clause is unenforceable as against Pennsylvania public policy because Pennsylvania "encourages class action arbitration" and has a "longstanding policy favoring classwide arbitration." *Thibodeau*, 912 A.2d at 881. A policy favoring classwide arbitration is what the Supreme Court has identified as undermining FAA objectives. *See Concepcion*, 131 S. Ct. at 1748-53.

arbitration.  If a designated arbitrator is unavailable, Section 5 of the FAA[4] permits a court to

appoint a substitute arbitrator in certain circumstances.  Our court of appeals has not addressed

the precise set of circumstances in which a court may appoint a substitute arbitrator, but other

federal courts have held that Section 5 of the FAA generally permits a court to appoint a

substitute arbitrator where the chosen arbitrator is unavailable, unless the selection of an

arbitrator is "integral" to the arbitration agreement, as opposed to an "ancillary logistical

concern."  *See Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006), *abrogated on other

grounds by Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931 (9th Cir. 2010);

*Brown v. ITT Cons. Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).

An arbitral forum is an integral part of an arbitration agreement if the agreement includes

an express statement designating a particular arbitral forum to administer arbitration.  *See In re

Salomon Inc. S'holders Derivative Litig.*, 68 F.3d 554, 556-61 (2d Cir. 1995); *Carideo v. Dell,

Inc.*, No. 06-1772, 2009 WL 3485933, at *4 (W.D. Wash. Oct. 26, 2009).  In *Solomon*, the

parties' arbitration agreement provided that "all disputes were to be arbitrated by the NYSE and

only the NYSE, in accordance with the NYSE Constitution and rules."  68 F.3d at 557.  A

dispute arose between the parties, but the NYSE Board declined to serve as an arbitrator.  *Id.* at

556.  Because the parties "had contractually agreed that only the NYSE could arbitrate any

disputes between them," and the NYSE refused to administer the arbitration, the court held the

---

[4] Section 5 of the FAA provides in pertinent part:
If in the agreement provision be made for a method or naming or appointing an arbitrator . . . such
method shall be followed; but if no method be provided therein, or if a method be provided and any
party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse
in the naming of an arbitrator . . . then upon the application of either party to the controversy the court
shall designate and appoint an arbitrator.
9 U.S.C. § 5.

arbitration agreement unenforceable and did not appoint a substitute arbitrator.  *Id.* at 559.

Similarly, in *Carideo*, the parties' arbitration agreement provided that disputes "shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum (NAF) under its Code of Procedure then in effect."  2009 WL 3485933, at *4.  The court determined that the NAF was an integral part of the arbitration agreement because the agreement expressly selected NAF as the exclusive arbitral forum.  *Id.* at *4-5.  Appointing "a substitute arbitrator would constitute a wholesale revision of the arbitration clause."  *Id.* at *6.  NAF's unavailability to administer arbitration rendered the arbitration clause unenforceable.  *Id.*; *see also Khan v. Dell, Inc.*, No. 09-3703, 2010 WL 328529, at *1-4 (D.N.J. Aug. 18, 2010) (in an arbitration clause with identical language, NAF was an integral part of the parties' agreement to arbitrate, so that the arbitration clause was rendered unenforceable by NAF's unavailability).

If an arbitration clause requires application of the rules of a particular arbitral forum, but does not require that arbitration occur in any particular forum, then the arbitral forum is an ancillary logistical concern, rather than an integral part of the arbitration clause, and the arbitration clause remains enforceable despite the unavailability of the designated arbitral forum. *See Reddam*, 457 F.3d at 1060.  In *Reddam*, the arbitration clause stated that "[a]ny arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc."  *Id.* at 1059.  Because the arbitration clause required application of the rules of the National Association of Securities Dealers, Inc. ("NASD"), but did not require that the NASD itself administer the arbitration, the court determined that the NASD was not an integral part of the arbitration clause; any other arbitral forum could administer

10

arbitration and simply apply NASD's rules.  *Id.* at 1059-60.  NASD's unavailability to administer the arbitration did not render the arbitration clause unenforceable.  *Id.* at 1060-61.

The instant arbitration clause states that all disputes "shall be resolved by binding individual (and not class, consolidated or representative) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed." Def.'s Mot. to Dismiss or Compel Arbitration, Ex. A.  Unlike the arbitration clauses in *In re Solomon* and *Carideo*, the arbitration clause in each of Clerk's loan agreements does not contain an express statement designating NAF as the exclusive arbitral forum and requiring it to administer arbitration.  *Cf. In re Solomon*, 68 F.3d at 557; *Carideo*, 2009 WL 3485933, at *4. The instant arbitration clause only requires application of the NAF's rules, similar to the arbitration clause in *Reddam*.  *See* 457 F.3d at 1059.  The language of the instant arbitration clause is permissive; it does not require that a party file a claim with the NAF, but instead states that claims "*may* be filed" at an NAF office or with the NAF through the internet, telephone, or U.S. mail.  Def.'s Mot. to Dismiss or Compel Arbitration, Ex. A (emphasis added).  The "notice" provision at the end of the arbitration clause states that the parties agree to binding arbitration and waive their right to file a lawsuit in court, but it does not specify any arbitral forum.

The plain language of the arbitration clause makes it clear that the parties agreed to arbitrate; it is not clear that the parties agreed to arbitrate only if a certain forum were available. Because there is no language evidencing a clear intent to designate the NAF as the exclusive arbitral forum, appointing a substitute arbitrator would not contravene the parties' intent.  The availability of NAF is not integral to the arbitration clause.  The arbitration clause remains valid

and enforceable despite the unavailability of the NAF to administer arbitration.  The court will

appoint a substitute arbitrator under Section 5 of the FAA.

**III.     Conclusion**

The arbitration clause is valid and enforceable under Section 2 of the FAA.  The motion

to dismiss in favor of, or to compel, arbitration will be granted.  Because the NAF is no longer

available to administer arbitration, the court will, under Section 5 of the FAA, appoint a

substitute arbitrator to administer arbitration pursuant to NAF rules.  An appropriate order

follows.